IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
JUDGE WALKER D. MILLER

Civil Action No. 07-cv-00627-WDM

DEBORAH BATCHELDER,

    Plaintiff,

v.

MICHAEL J. ASTRUE, Commissioner of Social Security,

    Defendant.

**MEMORANDUM OPINION AND ORDER**

Miller, J.

Plaintiff Deborah Batchelder ("Claimant") appeals the denial of her application for disability insurance benefits by defendant Michael J. Astrue, Commissioner of Social Security ("Commissioner"). I have considered the parties' written and oral arguments, as well as the evidence contained in the certified administrative record. For the reasons that follow, I conclude this case should be remanded to the Commissioner.

Background

Claimant was born in June, 1956. Administrative Record at 52. She completed high school and some post-secondary education. *Id.* at 65  She worked primarily in the food service industry and as a semi-skilled aide in caring for the disabled. *Id.* at 60.

Claimant asserts that she became disabled on September 15, 2003 as a result of a work-related accident in August 2003 which caused neck, shoulder and back injuries. *Id.* at 53. These injuries combined to give her a 32% whole person impairment rating under the Colorado Workers' Compensation system. *Id.* at 306. She also alleges disabling conditions from a laceration to her left index finger in 1998 and depression, primarily

resulting from her injuries.

Claimant's protective filing date for disability insurance and supplemental security income benefits April 2004. *Id.* at 52-55. After denial, Claimant requested a hearing, which was granted. *Id.* at 46-49. The hearing was held before ALJ William Musseman on October 12, 2005. *Id.* at 341-49. Claimant was represented by counsel at the hearing and a vocational expert ("VE") testified in response to several hypothetical questions about jobs existing in the economy that a person with some of Claimant's restrictions might be able to perform. *Id.* The ALJ issued an unfavorable decision on November 28, 2005. *Id.* at 22-34. Claimant filed a Request for Review with the Appeals Council on January 19, 2006. *Id.* at 9. Claimant's Request for Review with the Appeals Council was denied on February 16, 2007. *Id.* at 5-8. After Claimant's hearing before the ALJ but before the decision of the Appeals Council, Claimant turned 50.

Medical History

Claimant injured her left index finger while working as a seafood department manager in a retail food store in 1998. *Id.* at 312-13, 344. She was evaluated as having a 20% loss in that finger. *Id.* at 313. She worked several years as a care worker for the disabled and then worked as a bartender and waitress starting around 2001. *Id.* at 60. She states that she suffered an on the job injury to her shoulder and back while lifting heavy bags or containers of bottles in August 2003. *Id.*

Claimant received chiropractic treatment from October 2003 to August 2004 and physical therapy from September 2003 to July 2004, which improved her condition to some extent. Nonetheless, in a chiropractic treatment note from August 2004, she reports that she is still feeling sharp pain that radiates to her left arm. *Id.* at 187.

Claimant's primary treating source is Patricia Carnahan, a nurse practitioner, who

2

opined in January 2004 that Claimant could return to a modified work duty, but could lift no more than ten pounds. *Id.* at 103. Claimant was examined several times from January to May 2004 by Paul Abbott, M.D. In a treatment note from May 2004, he notes tenderness over the acromioclavicular joint and multiple positive trigger points in Claimant's trapezius and medial border of the scapula. An MRI of Claimant's left shoulder revealed joint hypertrophy and impingment, but no rotator cuff tear. *Id.* at 112. Dr. Abbott diagnosed chronic myofascial pain syndrome[1] but recommended no surgical intervention. *Id.* at 124, 127.

An independent medical examiner, Kathy McCranie, M.D., examined Claimant and Claimant's medical records in May 2004. *Id.* at 90-95. Dr. Cranie also assessed left should scapular pain, myofascial and mild acromioclavicular joint hypertrophy and impingement. *Id.* at 94. Dr. McCranie opined that Claimant could return to work in the light to medium work category, but was limited to lifting no more than 50 pounds and no repetitive lifting over 20-25 pounds. *Id.*

Claimant was also examined in August 2004 by Scott Raub, D.O., who did not find any trigger points but rather generalized tenderness to palpation. *Id.* at 274. Dr. Raub opined that Dr. McCranie's work limitations were appropriate and that Claimant might have psychosocial issues affecting her recovery. *Id.* at 275. He noted that she reported trouble sleeping because of pain and recommended a prescription of Elavil. *Id.* He opined she most likely had a soft tissue injury but recommended a cervical spine MRI as a further diagnostic. *Id.* Claimant took Elavil as prescribed but reduced its use around September

---

[1]According to MedicineNet.com, "Myofascial pain is a chronic condition that affects the fascia (connective tissue that covers the muscles)." It is usually associated with a tender or "trigger" point that causes pain to radiate or refer elsewhere, and can also cause depression, fatigue, and behavioral problems.

3

2004 after it began giving her headaches. *Id.*at 285.

In September 2004, Colleen Duffy, M.Ed., L.L.C., performed a psychological evaluation of Claimant. Ms. Duffy noted that, based on certain test results, Claimant's "report of pain and associated pain behavior may be unreliable." *Id*. at 258. Ms. Duffy further opined that Claimant had "several psychosocial roadblocks to recovery." *Id*. Ms. Duffy assessed probable compensation neurosis, depressive disorder, with some "Passive Aggressive features noted." *Id*. at 259. Ms. Duffy recommended that Claimant receive eight psychotherapy sessions to address some of these issues. *Id*. Claimant had a single psychotherapy session in January 2005. *Id*. at 297.

An MRI of Claimant's cervical spine in November 2004, more than a year after her injury, revealed lower cervical spondylosis at the C5-6 level with a paracentral disc protrusion and annular tear, as well as additional problems at C6-7. *Id*. at 260A. In treatment notes dated December 1, 2004, Dr. Raub opined that Claimant's pain was related to these problems. *Id*. at 262. He noted that she could be a candidate for cervical intraspinal injections and should consider a surgical consultation, but he strongly encouraged psychotherapy as advised by Ms. Duffy. *Id*. at 262-63. In a report dated December 1, 2004, Dr. Raub revised his opinion of Claimant's abilities and opined that she could lift, repetitively lift, carry, and push or pull no more than five pounds. *Id*. at 268.

In December 2004, Ms. Carnahan opined that Plaintiff was restricted to lifting no more than five pounds. *Id*. at 267. In a treatment note from January 2005, Claimant's medications were Flexeril, Mobic, and Amitryptiline.

Dr. James Bachman conducted an IME of Claimant around September 2005. *Id*. at 299-308. He opined that she had "some mild deficit in social functioning" and an overall 5% mental impairment. *Id.* at 306. He rated Claimant's shoulder impairment at 18% upper

4

extremity, and 11% whole person impairment.  *Id.*  He also concluded that her cervical spine injury amounted to a 16% rating "due to decrease[d] cervical range of motion", with a 19% whole person impairment rating.  *Id.*  Taking all impairments together, Dr. Bachman opined that she had a whole person impairment rating of 32%.  *Id.*  He further opined that she could lift five pounds frequently and 15 pounds occasionally.  *Id.* at 307.  He also recommended a functional capacity evaluation for an objective evaluation of her work capacity.  *Id.* at 308.

Administrative Proceedings

At the hearing, Claimant described her pain as being primarily in her neck and left shoulder, radiating into her trapezoid and left arm and causing tingling in her left hand.  *Id.* at 345.  She reported that the neck pain is constant and that the arm pain is dependent on position and movement.  *Id.*  She testified that she could lift five pounds, perhaps up to ten.  *Id.*  Claimant testified that she could not reach over her head and that reaching forward and pushing and pulling were painful.  *Id.* at 346.  She also described aches in her arms and legs.  *Id.* at 346-47.  Claimant testified that she takes Mobic, Skelaxin, and Flexeril for pain and takes Amitriptyline for pain relief and depression.  *Id.* at 347.  She described sleep disturbances, stating that she wakes up after a few hours from neck pain, and a resulting need for daily naps.  *Id.* at 348.  Claimant stated she had residual problems with her left index finger, including numbness, and that it caused her to drop things.  *Id.*  When asked about depression, Claimant testified that she sometimes gets "short."  *Id.* at 349.  She is now living in assisted housing, where she receives services to help with outdoor maintenance and household repairs, although she does some basic housework like vacuuming, dishes, and laundry.  *Id.*  Her adult children do her grocery shopping for her.  *Id.*  In a typical day, she feeds her horses with one pound cans of feed, does a little

5

housework, takes a nap, and prepares dinner. *Id.* at 350-51. She used to do rodeo activities as a hobby but now no longer even rides her horses. *Id.* at 351. Claimant's attorney repeated a request for a psychological examination, but the ALJ denied the request. *Id.* at 353.

A VE, Robert L. Schmidt, testified as well. The ALJ posed a hypothetical question involving a person with Claimant's age, education, and vocational background limited as follows: lifting and carrying no more than 10 pounds, occasionally pushing and pulling and no over chest level work. *Id.* at 355. Given those limitations, the VE testified that Claimant could not perform her previous work. *Id.* He opined, however, that Claimant could perform work as an information clerk, receptionist, or food/beverage order clerk, jobs which existed in certain numbers in Colorado. *Id.* at 355-56. If keyboarding skills were limited, however, only the information clerk job remained. *Id.* at 357. In addition, if the individual were limited to lifting less than five pounds, the information clerk job would be eliminated. *Id.* at 358.

The ALJ issued a decision on November 28, 2005. *Id.* at 13-21. The ALJ reviewed and summarized the medical records and made the following findings:

1. Claimant had not engaged in substantial gainful activity since her onset date. *Id.* at 15.

2. Claimant had severe impairments, specifically a left rotator cuff injury, degenerative changes of the cervical spine, and myofascial pain syndrome. *Id.* at 15. The ALJ declined to find that Claimant's depression or left index finger impairments to be severe. *Id.* at 16. The ALJ concluded that since Claimant worked after the left index finger injury it was not severe. *Id.* In addition, the ALJ discounted the diagnosis of depression on the grounds that "her psychological tests were considered suspect" and because there was no other record of treatment besides one psychotherapy session. *Id.* The ALJ also found no evidence to support Claimant's assertion of a lumbar spine impairment. *Id.*

3. None of the impairments, alone or in combination, met the criteria of any

        listed impairment. *Id.* at 17.

4. Claimant had the residual functional capacity to lift or carry no more than 10 pounds, stand, walk or sit for up to six hours a day in an eight hour day, with occasional pushing and pulling and no reaching above the chest level. *Id.* at 17.

5. The ALJ also did not find Claimant's report of disabling pain to be fully credible. *Id.* at 18. He noted that there was little objective evidence to support the alleged inability to engage in substantial gainful activity and gave specific examples from the record showing previous improvement and normal examination results. *Id.* The ALJ also discounted Claimant's alleged need for daily naps, as the record does not indicate she revealed this to her physicians. *Id.* In addition, the ALJ noted her ability to perform some household tasks. *Id.*

6. Claimant could not perform her past relevant work. *Id.* at 19. However, Claimant was capable of performing job existing in significant numbers in the economy, as evidenced by the vocational expert's testimony. *Id.* at 20

The Appeals Council denied a request for review, rendering the ALJ's determination final for purposes of this appeal.

## Standard of Review

I review the Commissioner's decision to determine whether his factual findings are supported by substantial evidence in the record as a whole and whether he applied the correct legal standards. *Castellano v. Sec'y of Health & Human Servs.*, 26 F.3d 1027, 1028 (10th Cir. 1994). "Substantial evidence is 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). The Commissioner must apply the correct legal standard, and must provide the court with a sufficient basis to determine that appropriate legal principles were followed. *Nielson v. Sullivan*, 992 F.2d 1118, 1119-1120 (10th Cir. 1993).

## Discussion

Claimant makes five arguments on appeal: (1) the ALJ erred in not finding that

7

Claimant's depression and left index finger impairment were severe; (2) the ALJ's findings were inconsistent and incomplete and the restrictions he gave Claimant would allow only "sedentary" work; (3) the ALJ and Appeals Council erred by failing to consider the applicability of the Medical Vocational Disability Rule 201.14; (4) the ALJ failed to make sufficient inquiry into the discrepancy between the VE's testimony and the Dictionary of Occupational Titles; (5) the ALJ's credibility determination was not based on substantial evidence.

    1.    <u>Failure to Find Depression, Left Index Finger Injury Severe</u>

Claimant argues that the ALJ's determination with respect to the left index finger injury was in error because it was based on his conclusion that she had been able to work for four years after sustaining the injury. She argues that the medical evidence demonstrates that an evaluating physician concluded she had a 20% loss of use of that finger, which satisfies her *de minimus* burden at Step 2. I disagree with Claimant in this regard. There appears to be substantial evidence to support the ALJ's determination. Although Claimant raises the possibility that the finger injury could make it difficult for her to use a keyboard, there was simply no evidence about the effect of this injury on her ability to use a keyboard or perform other job functions. There is evidence on the record that Claimant had use of the index finger and hand, that her left hand is non-dominant, and that she worked at several different jobs with this injury, including jobs requiring the use of both hands (like bartending).

Claimant also argues that the ALJ's reasons for failing to include depression as a severe impairment were erroneous. The ALJ concluded there was little to substantiate the diagnosis, that the tests were "suspect," and that there was no record of treatment other

8

than one therapy session. I conclude that the ALJ's reasons for rejecting the diagnosis are not supported by substantial evidence. The record does not show that the test results were "suspect." There are several statements by treating sources opining that Claimant's depression/mental impairment was affecting her rehabilitation. Moreover, the diagnosis was made by a professional in the field, and it appears that the ALJ may have substituted his lay judgment for that of a medical professional. Moreover, I note that the ALJ also discounted the diagnosis because Claimant was not taking any medication; however, at the hearing, the Claimant testified that she was taking Amitryptiline, in part for depression. Accordingly, the ALJ's determination that Claimant's depression is not a severe impairment is not supported by substantial evidence.

2. <u>Restrictions Amounting to Sedentary Work and Application of Rule 201.14.</u>

Claimant argues that the ALJ opined that Claimant could perform light work, but that his restrictions were actually only compatible with a limited range of sedentary work. Specifically, the ALJ's RFC for Claimant was that she could "lift or carry no more than 10 pounds, stand, walk or sit for up to six hours a day in an eight hour day, with occasional pushing and pulling and no reaching above the chest level." This appears to be correct, in that light work generally requires lifting up to 20 pounds with frequent lifting or carrying of objects weighing up to 10 pounds and involves a good deal or walking or standing, as well as some pushing or pulling or using foot controls. *See* 20 C.F.R. § 404.1567(b). Sedentary work is defined as work involving lifting no more than 10 pounds and occasionally lifting or carrying articles like docket files, ledgers and small tools, involving sitting but also a certain amount of walking and standing. *See* 20 C.F.R. § 404.1567(a). The Commissioner argues in response that the ALJ did not assess Claimant with all of the

9

restrictions contained in the definition of sedentary work. However, I note that all of the jobs identified by the VE were in the sedentary category.

This is significant because if Claimant is only capable of sedentary work, under the Medical Vocational Guidelines and considering Claimant's current age of 50, she would be conclusively deemed disabled. She contends that because she was almost 50 years old at the time of the decision, the ALJ should have considered whether her age was in a borderline situation and should have used the "sedentary" table, rather than the "light" work table. Borderline age situations are discussed in Social Security Ruling 83-10; the ruling basically notes that the grids should not be applied mechanically in borderline situations.

It appears that Claimant turned 50 while the claim was pending before the Appeals Council. I agree that the ALJ's RFC for the Claimant is closer to sedentary work than to light work. In response, the Commissioner argues with little elaboration that "based upon the record as a whole, the ALJ assessed [Claimant] with a range of light work, which includes standing and/or walking up to six hours in an eight-hour workday" and that at the time of the decision, Claimant was not yet 50. Response at 20. Given that the Claimant was 50 years old at the time of the Commissioner's final decision and the RFC is closer to sedentary work, as well as the lack of consideration of Claimant's mental impairment and borderline age by the ALJ, I conclude that remand is necessary so that the full effect of these issues can be addressed.

    3.    <u>Discrepancy with Dictionary of Occupational Titles</u>

As noted, the VE identified several jobs that could be performed by a person with the RFC identified by the ALJ. However, the RFC and hypothetical question to the VE contained the restriction of no reaching over chest level. Claimant contends that the ALJ

10

erred because the Dictionary of Occupational Titles shows that each of the identified jobs requires reaching (although it is unclear whether the reaching is over chest level). The VE testified that his testimony was consistent with the DOT and the ALJ did not address this discrepancy. However, the Claimant raised the issue with the Appeals Council, which still affirmed the ALJ.

Although the DOT descriptions are ambiguous, there may be an issue as to whether Claimant's reaching restrictions should be taken into consideration in determining whether she is actually capable of performing these jobs. This should be addressed on remand.

### 4. Credibility

The ALJ found that Claimant was not credible based on the following: the lack of objective evidence to support her allegations, the statements of Dr. Abbott including a "normal" MRI, normal range of motions findings, "little" mention of the need to take naps, and Claimant's ability to do household activities and care for her horses.

Claimant asserts that there is a good deal of objective evidence supporting the existence of impairments capable of producing pain. I agree. Specifically, the most recent MRI showed numerous problems in the cervical spine and other disorders have been noted. In addition, the ALJ's reliance on Dr. Abbott's opinion that Claimant's MRI was "grossly normal" is not justified. This and several other opinions were rendered before the cervical spine MRI was taken, which revealed the problems that may have been causing Claimant's pain, as noted by Dr. Raub. The same applies to the conclusion that the normal range of motion undermines Claimant's report of pain. Claimant argues that there are also numerous references in the record to her difficulties sleeping, which supports her asserted need for regular naps. Finally, the fact that Claimant does a few chores does not

11

by itself mean that Claimant does not suffer from disabling pain. Claimant testified that she lives in an assisted living facility and that she does minimal household chores. Her testimony regarding her horses is that she feeds them quantities of food weighing only about a pound. *Thompson v. Sullivan*, 987 F.2d 1482, 1490 (10th Cir. 1993) (ALJ may not rely on minimal daily activities as substantial evidence that a claimant does not suffer disabling pain); *Gossett v. Bowen*, 862 F.2d 802, 807 (10th Cir.1988) (claimant's ability to do daily activities, standing alone, does not establish that the claimant can engage in light or sedentary work  but considered in the context of the record may support such a finding). These issues should be considered when the ALJ makes a determination of Claimant's credibility on remand.

## Conclusion

Based upon my review of the record in this case, I find that the ALJ's findings are not supported by substantial evidence. Accordingly, the determination that Claimant is not disabled is reversed and this matter is remanded for proceedings consistent with this opinion.

DATED at Denver, Colorado, on August 19, 2008.

BY THE COURT:


s/ Walker D. Miller
United States District Judge